

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

OCT 2 4 2013

CLERK, U.S. DISTRICT COURT
By_____
                Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SUZY MCMILLIAN, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-661-A |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISIONER OF SOCIAL | § | |
| SECURITY, | § | |
| DEFENDANT. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I.      STATEMENT OF THE CASE

Plaintiff Suzy McMillian ("McMillian") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). In April 2010, McMillian protectively applied for DIB, alleging that her disability began on April 21, 2010. (Tr. 17, 108-14, 123-24.)

Her application was denied initially and on reconsideration, and McMillian requested a hearing before an ALJ. (Tr. 17, 70-80.) On April 27, 2011, the ALJ held a hearing, and, on

1

August 25, 2011, the ALJ issued a decision that McMillian was not disabled. (Tr. 17-25, 30-67.) McMillian filed a written request for review and, on July 20, 2012, the Appeals Council denied her request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-3, 12.)

## II.    STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work

experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley,* 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis,* 837 F.2d at 1383.[1]

### III. ISSUES

In her brief, McMillian presents the following issues to the Court:

1. Whether the decision must be remanded because a residual functional capacity ("RFC") determination that contains a sit/stand opinion is inconsistent with sedentary work;

2. Whether the ALJ erred in relying on the vocational expert ("VE")'s opinion at Step Four;

---

[1] There are four elements of proof that must be weighed in determining whether substantial evidence of disability exists: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Wren v. Sullivan,* 925 F.2d 123, 126 (5th Cir. 1991).

3. Whether the ALJ's RFC determination is supported by substantial evidence;

4. Whether the ALJ failed to fully develop the facts of the case;

5. Whether the ALJ erred in failing to find that McMillian's impairments of depression and chronic pain syndrome were severe impairments at Step Two; and

6. Whether the ALJ's credibility determination is supported by substantial evidence.

## IV.   ADMINISTRATIVE RECORD AND ALJ DECISION

The ALJ, in his August 25, 2011 decision, stated that McMillian had not engaged in any substantial gainful activity since April 21, 2010, her alleged onset date of disability, and she met the insured status requirements of the SSA through December 31, 2014. (Tr. 19.) He further found that McMillian had the "severe" impairments of (1) status post lumbar fusion and (2) fibromyalgia.   (Tr. 19.)   Next, the ALJ held that none of McMillian's impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 20.) As to McMillian's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work . . . except the claimant has [sic] must be able to frequently alternate between sitting and standing; is limited to frequent, but not constant fingering and handling; and is limited to detailed, but not complex job tasks.

(Tr. 20 (emphasis omitted).)

The ALJ opined, based on this RFC assessment and the testimony of the VE, that McMillian was able to perform her past relevant work as a customer service representative and phone order clerk. (Tr. 24.)   Thus, the ALJ concluded that McMillian was not disabled. (Tr. 24.)

4

## V.   DISCUSSION

### A.  Sit/Stand Option and Sedentary Work

In her brief, McMillian claims that the ALJ erred in his RFC determination because a sit/stand option is inconsistent with sedentary work. (Plaintiff's Br. ("Pl.'s Br.") at 10-11; *see* Plaintiff's Reply ("Pl.'s Reply") at 1-3.) McMillian states that jobs are sedentary if, *inter alia*, walking and standing are required occasionally. (Pl.'s Br. at 10.) McMillian, citing to Social Security Ruling 83-10, asserts that the ALJ's RFC finding requiring her to frequently alternate between sitting and standing is incompatible with the definition of sedentary work, which was the type of work the ALJ found that McMillian was capable of performing. (Pl.'s Br. at 10-11; Pl's Reply at 1-3.)

In this case, the ALJ found, as stated above, that McMillian had the RFC to perform sedentary work except that she, as relevant here, must be able to frequently alternate between sitting and standing. (Tr. 20.) Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). To perform the full range of sedentary work, an individual must be able to remain in a seated position for approximately six hours of an eight-hour workday and stand and walk for approximately two hours of an eight-hour day. *See* SSR 96-9p, 1996 WL 374185, at *6 (S.S.A. July 2, 1996).

While McMillian is correct in stating that sedentary jobs require considerable sitting, "not all sedentary jobs are ruled out due to the addition of a sit/stand option." *Ledoux v. Astrue*, No. 07-1249, 2008 WL 4280033, at *34 (W.D. La. Aug. 26, 2008). Contrary to McMillian's

assertions, the ALJ is allowed to add additional limitations in the RFC determination that erode the occupational base for the full range of a certain type of work. *See, e.g., Amason v. Colvin*, No. 4:11-CV-805-A, 2013 WL 1413023, at *9-10 (N.D. Tex. Mar. 1, 2013). "Social Security Ruling 83-12 provides that in cases where a limitation on the ability to sit or stand exists, the ALJ must consult a VE to determine the implications for the occupational base." *Ledoux*, 2008 WL 4280033, at *3. This is exactly what the ALJ did in this case. The ALJ consulted a VE and asked the VE whether a person with McMillian's age, education, and work history could perform the RFC as found by the ALJ, *i.e.*, sedentary work with frequent sitting and standing; frequent, but not constant, fingering and handling; and detailed but not complex job tasks.[2] (Tr. 64-65.) The VE testified that such a person would be able to perform McMillian's past relevant work as a phone order clerk and customer service representative. (Tr. 63-65.) Accordingly, based on such testimony, the ALJ found that McMillian could perform her past relevant work and was not disabled. (Tr. 24.) As substantial evidence supports the ALJ's decision, remand is not required on this issue.

### B.  VE Testimony

McMillian also claims that the ALJ erred in relying on the VE's testimony at Step Four. Specifically, McMillian argues that the VE's testimony that McMillian could perform her past relevant work as a phone order clerk or customer service representative is erroneous because the VE failed to identify the Dictionary of Occupational Title ("DOT") codes associated with such

---

[2] McMillian, in her reply, argues that the "VE's testimony indicates that the VE did not fully endorse a sit/stand option in either occupation" because the VE stated, in essence, that McMillian would not be able to change positions between sitting and standing "at will." (Pl.'s Reply at 2-3.) Thus, McMillian argues that it was error for the ALJ to rely on the VE's testimony that McMillian could perform two jobs of her past relevant work because the VE really found that McMillian could not perform her past relevant work as she needed to change positions "at will." (Pl.'s Reply at 2-3.) However, the ALJ did not find in his RFC determination that McMillian needed to be allowed to alternate between sitting and standing "at will." Instead the ALJ found that McMillian needed be allowed to alternate "frequently." (Tr. 20.) Thus, it was not error for the ALJ to rely on the VE's testimony that McMillian was able to perform two jobs from her past relevant work even with the added limitation that she must be able to frequently alternate sitting and standing because the VE had testified as such.

positions and such testimony conflicts with the reasoning development levels set forth in the DOT codes for such jobs. (Pl.'s Br. at 10-13.) In addition, McMillian claims that the DOT codes "do not recognize or define a sit and stand accommodation." (Pl.'s Br. at 13.) McMillian further claims that such conflicts are direct conflicts and the ALJ, thus, had the duty to ensure that the record was fully and fairly developed even if McMillian, who was appearing *pro se* at the time, did not ask about such conflicts at the hearing. (Pl.'s Br. at 12-13.)

Where there is a conflict between the VE's testimony and the DOT, the Fifth Circuit has adopted a "middle ground" approach under which the ALJ's discretion to choose between conflicting evidence is not unfettered. *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000); *see Nally v. Astrue*, No. 3-10-CV-1631-BD, 2011 WL 3844107, at *4 (N.D. Tex. Aug. 29, 2011) (stating that the Fifth Circuit has "adopted a 'middle ground' approach which allows the ALJ to rely on vocational expert testimony if the record reflects an adequate basis or a reasonable explanation for deviating from the DOT"). Because this type of conflict surfaced somewhat frequently, the Commissioner issued SSR 00-4p to ensure that ALJs would expose and reconcile such conflicts before relying on VE testimony.[3] SSR 00-4p, 2000 WL 1898704 (S.S.A. Dec. 4,

---

[3] Before SSR 00-4p became effective, the Fifth Circuit decided *Carey* to resolve whether VE testimony that conflicts with the DOT can provide substantial evidence to support the Commissioner's decision. *Carey*, 230 F.3d at 143-45 (identifying the various positions taken by other circuits); *see Johnson v. Astrue*, No. 11-3030, 2012 WL 5472418, at *8 (E.D. La. Oct. 5, 2005). However, under the "middle ground" approach adopted in *Carey*, the ALJ's "discretion to choose between conflicting evidence is not unfettered" and in part depends on the nature of the conflict. *Romine v. Barnhart*, 454 F. Supp. 2d 623, 627 (E.D. Tex. 2006); *see Carey*, 230 F.3d at 146-47.

*Carey* identified three types of conflict and limited its holding to "implied or indirect" conflict, which is characterized as being tangential in nature and unapparent until further inference is made. *Carey*, 230 F.3d at 145-47; *see Johnson*, 2012 WL 5472418, at *9 ("A tangential, implied or indirect conflict occurs when there is no direct conflict between the expert testimony regarding the exertional or skill level required for a particular job and the [DOT], but additional inferences can be drawn (and the plaintiff is asking the court to draw them on appeal) that the [DOT] description may conflict with the [VE's] testimony that the claimant is capable of performing a particular job."). In *Carey*, the claimant had only one arm, and the jobs in question required manual dexterity. *Carey*, 230 F.3d at 146. The court decided the conflict was implied or indirect because it did not even become apparent until "further inference is made that the jobs require manual dexterity with, not one, but two hands." *Id.* The court held that, to the extent the VE's testimony impliedly or indirectly conflicts with the DOT, "the ALJ may rely upon the [VE]'s testimony provided that the record reflects an adequate basis for doing so." *Id.* In so holding, the court

2000). The ruling, which unambiguously establishes the ALJ's affirmative duty to bring to light

and to explain any "apparent unresolved conflict" between the VE's testimony and the DOT or

its companion publication, the SCO, states the following:

> When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT. In these situations, the adjudicator will:
>
>> Ask the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT; and
>>
>> If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704, at *2, 4 (S.S.A. Dec. 4, 2000). When there is a conflict, neither

the DOT nor the VE evidence automatically "trumps" the other. *Id.* at *4. The conflict must be

resolved by determining whether the VE's explanation is reasonable and provides a basis for

---

reasoned that a claimant who did not raise implied conflict at the administrative hearing cannot be permitted to thereafter peruse the record in search of such conflict to present as reversible error. *Id.* at 146-47.

    *Carey* distinguished implied or indirect conflict from two other types of conflict: (1) the "direct and obvious" conflict, which exists when the VE's testimony conflicts with the DOT, and (2) the "less obvious" conflict, which arises when the VE's testimony "creates a conflict or discrepancy between the ALJ's [RFC] determination . . . and the DOT job descriptions." *Id.* at 145-46; *see Johnson*, 2012 WL 5472418, at *8 (stating that there are two ways VE's testimony can create a direct conflict: (1) when the VE testifies that a particular job requires a particular exertional or skill level when the DOT expressly provides that the job requires a different exertional level and (2) when the VE's testimony places the ALJ's RFC finding or the claimant's specific impairments in conflict with the exertional or skill level or the specific skills required for the identified jobs in the DOT). Courts have continued to treat both the "direct and obvious" conflict and the "less obvious" conflict as "direct conflicts," a category of conflicts separate and distinct from the implied or indirect conflict. *See Graham v. Comm'r of Soc. Sec. Admin.*, No. 3:08-CV-2133-N (BH), 2009 WL 3199382, at *7 (N.D. Tex. Oct. 2, 2009); *Augustine v. Barnhart*, No. 1:00-CV-749, 2002 WL 31098512, at *9 (E.D. Tex. Aug. 27, 2002) (referring to obvious conflict and less obvious conflict as "direct conflict scenarios").

    While *Carey* did not squarely decide what standard applies to direct conflict, district courts in this circuit have held that a claimant's failure to raise a direct and obvious conflict does not amount to waiver and that it is still the ALJ's burden to inquire about such conflict. *See, e.g., Romine*, 454 F. Supp. 2d at 630 (recognizing that *Carey* was limited to "extraordinary and extreme" situations involving implied or indirect conflict and that "one should not assume that *Carey* . . . articulate[d] a rule of general application in all circumstances"); *Cooper v. Comm'r of Soc. Sec. Admin.*, No. 3:09-CV-1302-BF, 2011 WL 61613, at *7-8 (N.D. Tex. Jan. 6, 2011) (Stickney, Mag. J.) (dismissing the waiver claim because it only applies to implied or indirect conflict); *Baty v. Barnhart*, 512 F. Supp. 2d 881, 893-94 (W.D. Tex. 2007) ("[T]he [direct] conflict present in this case was specifically excepted in the *Carey* case. Pursuant to the burden that is placed on the Commissioner in step 5 of the analysis and the ALJ's duty to fully develop the record, error was committed . . . ." (internal citations omitted)).

relying on the VE testimony rather than on the DOT information. *Id.* The ALJ must explain in his decision how any conflict that has been identified was resolved. *Id.*

SSRs represent "statements of policy and interpretations" adopted by the Social Security Administration that are "binding on all components" of the Administration. 20 C.F.R. § 402.35(b)(1). While binding on the Administration, these interpretive rulings are not binding on the courts, so courts need not give them the force and effect of law. *Batterton v. Francis*, 432 U.S. 416, 425 n.9 (1977) (noting the varying degrees of deference the rulings may be afforded); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam). However, courts may, as the Fifth Circuit frequently has, "rel[y] upon the rulings in evaluating ALJs' decisions." *Myers*, 238 F.3d at 620.

An ALJ's violation of a ruling, in general, is reversible legal error, provided that the error results in prejudice. *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981) (per curiam) ("Should an agency in its proceedings violate its rules and prejudice result, the proceedings are tainted and any actions resulting from the proceeding cannot stand."). In addition, the Fifth Circuit has ruled that, even when the ALJ fails to discover and address conflicts between the testimony of a VE and the DOT, the claimant is not entitled to relief unless he can show that he was prejudiced by the alleged error. *See DeLeon v. Barnhart*, 174 F. App'x 201, 203 (5th Cir. 2006). *See, e.g., Prochaska v. Barnhart*, 454 F.3d 731, 735-36 (7th Cir. 2006).[4] A claimant establishes the

---

[4] Also persuasive to this Court is the holding by the Eastern District of Texas that a violation of SSR 00-4p constitutes legal error and that remand is warranted upon a finding of prejudice. *Romine*, 454 F. Supp. 2d at 628. In *Romine*, the ALJ did not perceive that any conflict existed and, thus, did not ask about any potential conflict. *Id.* In the written decision, the ALJ stated, "The vocational expert testified that the information provided conforms to the Dictionary of Occupational Titles." *Id.* Noting that the ALJ was mistaken, the *Romine* court clarified that the hearing transcript did not reveal any such testimony by the VE. *Id.* Indeed, the VE simply "recited DOT codes for the jobs she identified" but did not "acknowledge, discuss, distinguish or reconcile" the DOT requirements with the hypothetical limitation. *Id.* Recognizing that each job identified by the VE presented the conflict, the court held that prejudice was self-evident because the VE might change her mind when presented with the conflict or that the ALJ might not be satisfied with the VE's attempt to dismiss the conflict. *Id.* at 628-29.

requisite prejudice by showing that, "if the ALJ had fully developed the record," additional evidence would have been produced that "might have led to a different decision." *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

At Step Four, the ALJ relied on the VE's testimony that McMillian was capable of performing her past relevant work as a customer service representative and phone order clerk in finding that McMillian was not disabled. (Tr. 24.)  Although not required to do so, the VE did not identify the specific DOT codes associated with the jobs of customer service representative and phone order clerk.[5]  McMillian argues that the DOT code that she located which applies to the occupation of "customer-service clerk" indicates that such job requires the ability to do light work and so the VE erred in finding that McMillian could perform such job since her RFC was limited to sedentary work with additional restrictions. (Pl.'s Br. at 11.)  However, as pointed out by the Commissioner, DOT code 239.362-014, which sets forth the requirements of a "Customer Service Representative," indicates that such job requires the ability to perform sedentary work.[6]  Thus, the ALJ did not err in relying on the VE's testimony as to this position and, therefore, no conflict with the DOT codes exists.

McMillian also argues that the ALJ erred in relying on the VE's testimony that McMillian could perform her past relevant work as a customer service representative and phone

---

[5] *See Haas v. Barnhart*, 91 F. App'x 942, 948 (5th Cir. 2004) ("[The claimant] cites no support for his claim that the DOT numbers for positions identified by the VE must be given."); *Nichols v. Astrue*, No. 5:09-CV-18-DCB-JMR, 2010 WL 5690390, at *12 (S.D. Miss. Apr. 20, 2010) ("Plaintiff does not cite any support for his claim that the DOT numbers for positions identified by the VE must be given."), *adopted in Nichols v. Astrue*, 5:09-CV-18-DCB-JMR, 2011 WL 359141 (S.D. Miss. Feb. 1, 2011).

[6] The Court notes, as pointed out by McMillian, that the VE, in her testimony before the ALJ, referred to McMillian's past relevant work in the customer service area as both a "customer service rep" and a "customer service clerk." (Pl.'s Reply at 3-4; *see* Tr. 63-64.)  McMillian argues that, because of this, "it is not possible to identify with any certainty which occupational title the VE was referring to during the hearing." (Pl.'s Br. at 4.)  The Court disagrees as during the hearing the VE stated that the "[c]ustomer service rep" position, as described in the DOT, was sedentary in nature and had an SVP of 5.  Thus, the only position that matches the VE's testimony is the "customer service representative" position associated with DOT code 239.362-014.  Thus, contrary to McMillian's claims, it is clear which DOT code applies to the VE's testimony.

order clerk because both jobs, according to the DOT, require a reasoning development level ("RDL") of 3, which McMillian claims is inconsistent with the ALJ's RFC determination that McMillian could perform "detailed but not complex tasks." (Pl.'s Br. at 11-12; *see* DOT § 239.362-014 (Customer Service Representative) and DOT § 249.362-026 (Order Clerk") (Rev. 4th ed. 1991).) At an RDL of 3, McMillian would need to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and d]eal with problems involving several concrete variables in or from standardized situations,"[7] which, according to McMillian, would require the performance of more than detailed tasks. (DOT, App. C at 1011.) The Court disagrees as such a definition appears to actually encompass, rather than exclude, the definition of a detailed task, which McMillian has been found capable of performing. In fact, there are a series of cases that have held that a job with an RDL of 3 is not inconsistent with an RFC determination that limits a claimant to the performance of simple, routine work tasks.[8] In this case, McMillian has been found to be capable of doing much more

---

[7] An RDL 1 requires the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions [and d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, App. C. RDL 2 requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations." *Id.*

[8] *See, e.g., Caronia v. Colvin,* No. 4:12-CV-595-Y, 2013 WL 5192904, at *6 (N.D. Tex. Sept. 13, 2013); *Gaige v. Astrue,* No. 4:12-CV-008-A, 2013 WL 1291754, at *14 (N.D. Tex. Mar. 1, 2013), *adopted in* 2013 WL 1286289 (N.D. Tex. Mar. 29, 2013); *Webb v. Astrue,* No. 4:08-CV-747-Y, 2010 WL 1644898, at *12 n.10 (N.D. Tex. Mar. 2, 2010), *adopted in* 2010 WL 1644697 (N.D. Tex. Apr. 22, 2010) ("A job as a city bus driver that requires a RDL of three is not necessarily inconsistent with an RFC that includes only the ability to perform simple, routine work tasks); *Veal v. Soc. Sec. Admin.,* 618 F.Supp.2d 600, 613–14 (E.D.Tex.2009); *Pete v. Astrue,* No. 08–CV–774, 2009 WL 3648453, at *5–6 (W.D. La. Nov. 3, 2009); *Dugas v. Astrue,* No. 1:07–CV–605, 2009 WL 1780121, at *6 (E.D. `Tex. June 22, 2009) ("A limitation of performing 1–2 step instructions in a simple, routine work environment does not necessarily preclude the ability to perform jobs with reasoning levels of 2 or 3.") (internal citations omitted); *Adams v. Astrue,* No. 07–CV–1248, 2008 WL 2812835, at *3 (W.D. La. June 30, 2008) ("As several courts have held, reasoning level two requires the worker to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations, and appears consistent with residual functional capacity to perform simple, routine work tasks."). *But see Lockett v. Colvin,* No. 4:12-CV-221-Y, 2013 WL 4854529, at *7 (N.D. Tex. Sept. 11, 2013); *Otte v. Comm'r, Soc. Sec. Admin.,* No. 3:08-CV-2079-P, 2010 WL 4363400, at *8 (N.D. Tex. Oct. 18, 2010), *adopted in* 2010 WL 4318838 (N.D. Tex. Oct. 27, 2010); *Davis v. Astrue,* No. 3-06-CV-883-B, 2008 WL 517238, at *5 (N.D. Tex. Feb. 27, 2008) ("Because the ALJ accepted [the doctor's] administrative hearing testimony that

than simple, routine work tasks.  In addition, "the use of the word 'detailed' in the DOT is not equivalent to the word 'detailed' as used in the Social Security regulations." *Webb*, 2010 WL 1644898, at *12 n.10 (quoting *Adams*, 2008 WL 2812835, at *3); *see Abshire v. Astrue*, No. 07–CV–1856, 2008 WL 5071891 (W.D. La. Oct. 29, 2008) (stating that the Social Security Regulations have only two categories of abilities as to understanding and remembering instructions while the DOT has six levels for measuring this ability).  Based on the foregoing, the Court concludes that there is no conflict between the VE's testimony and the information contained in the DOT codes as to McMillian's ability to perform detailed but not complex work tasks.  Thus, substantial evidence supports the ALJ's decision at Step Four and remand is not required.

Finally, McMillian argues that there is a conflict between the ALJ's RFC finding limiting McMillian to a frequent "sit/stand option" and the fact that the DOT does not recognize or define such an accommodation.  (Pl.'s Br. at 13.)  However, the "DOT cannot and does not purport to include each and every specific skill or qualification for a particular job." *Amason*, 2013 WL 1413023, at *9.  "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).  Thus, "the DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job." *Cary v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000).

Based on a description of the jobs of the Customer Service Representative in DOT code 239.362-014 and Order Clerk in DOT code 249.362-026, the Court sees no conflict, direct or

---

Plaintiff was limited to following simple or detailed instructions . . . ., it was erroneous for him to likewise find that Plaintiff was capable of performing a job with a [RDL] of 3).

inherent, between the VE's testimony and the DOT's descriptions. The DOT does not provide that these jobs cannot be performed with frequent alternation between sitting and standing. Instead, the DOT is silent on the sit/stand option. The VE testified that a person with McMillian's RFC, including a frequent sit/stand option, would be able to perform the jobs of Customer Service Representative and Order Clerk. (Tr. 65.) Based on the VE's testimony, the Court concludes that substantial evidence supports the ALJ's decision at Step Four. *See Amason*, 2013 WL 1413023, at \*9. Consequently, remand is not required as to this issue.

### C. RFC and Substantial Evidence

McMillian next argues that the ALJ's RFC determination is not supported by substantial evidence because it fails to contain any limitations addressing McMillian's: (1) ability to sit, bend, or crouch; (2) severe fatigue from her fibromyalgia; (3) ability to reach; (4) ability to handle or finger; or (4) knee impairments. (Pl.'s Br. at 14-15.) In addition, McMillian argues that the ALJ erred in his RFC determination in failing to address each of the required seven strength demands separately as required by SSR 96-8p. (Pl.'s Br. at 15.) McMillian further claims that the ALJ erred by expressing the initial RFC assessment in terms of the exertional level of work, *i.e.*, sedentary in this case, in violation of SSR 96-8p. (Pl.'s Br. at 15-16.)

RFC is what an individual can still do despite her limitations.[9] SSR 96-8p, 1996 WL 374184, at \*2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id. See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. *Id.*; *see also Bassett v. Astrue*, No. 4:09-CV-142-A, 2010 WL 2891149, at \*13 (N.D. Tex. June 25, 2010). RFC is not the least an

---

[9] The Commissioner's analysis at Steps Four and Five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from Step Three to Step Four. *Id.*

individual can do, but the most.  SSR 96-8p at *2.  The RFC assessment is a function-by-function assessment, with both exertional and nonexertional factors to be considered and is based upon all of the relevant evidence in the case record.  *Id.* at *3-5.  The ALJ will discuss the claimant's ability to perform sustained work activity on a regular and continuing basis, and will resolve any inconsistencies in the evidence.  *Id.* at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, and must consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe.  *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence.  *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children).  The ALJ is not required to incorporate limitations in the RFC that he did not find supported by the record.  *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

In this case, as stated above, the ALJ found that McMillian had the RFC to perform sedentary work except that she (1) must be able to frequently alternate between sitting and standing, (2) is limited to frequent but not constant fingering and handling, and (3) is limited to detailed but not complex job tasks. (Tr. 20.)  Contrary to McMillian's claims, the ALJ did consider her ability to sit, bend, or crouch; her fatigue; her ability to reach, handle or finger; and her knee impairments.  To begin with, the ALJ recognized that McMillian claimed that she

14

suffered from back pain, knee pain, shoulder pain, and feet and hand pain and that she had issues

with fatigue.  (Tr. 21.)  The ALJ noted McMillian's allegations that these issues caused her to

have difficulty lifting, walking, standing, sitting, climbing stairs, bending, or using her hands,

and made it difficult for her to use the computer mouse and to perform her housework and yard

work.  (Tr. 21.)    However, the ALJ found that McMillian's testimony was not completely

credible based, *inter alia*, on the following evidence in the record:

> (1) the fact that McMillian's treatment for fibromyalgia did not support the alleged severity of the impairment as she had only had a handful of visits to a rheumatologist (Tr. 21);
>
> (2) an April 21, 2010 examination, in which Jharana Shrestha, M.D. ("Dr. Shrestha"), a rheumatologist, noted that McMillian's trigger points were negative and that she had full range of motion of the shoulders and 5/5 muscle strength (Tr. 21; *see* Tr. 396-97);
>
> (3) an April 28, 2010 examination in which Dr. Shrestha noted that McMillian reported that she was doing "ok" on her current medications, McMillian's proximal muscle pain had somewhat resolved, and she had no significant morning stiffness (Tr. 21; *see* Tr. 398-99);
>
> (4) a September 1, 2010 examination in which Dr. Shrestha noted that McMillian had reported that she had a "charley horse" in her legs but that she was sleeping okay (Tr. 22; *see* Tr. 392-93);
>
> (5) a February 10, 2011 examination in which McMillian reported bilateral foot pain and ankle swelling but no joint tenderness and Dr. Shrestha referred her to an orthopedist for her ankle pain (Tr. 22; *see* Tr. 388-89);
>
> (6) an April 6, 2011 examination in which McMillian reported bilateral knee pain but that her ankles were doing okay and Dr. Shrestha gave her knee injections (Tr. 22; *see* Tr. 386-87);
>
> (7) a April 13, 2011 examination in which Dr. Shrestha noted that McMillian reported that she continued to have bilateral knee pain and her shoulders hurt worse than her knees and found that she had no swelling, no joint stiffness, full range of motion of the shoulders, and mild crepitus of the knees (Tr. 22; *see* Tr. 384-85);
>
> (8) an April 19, 2011 examination in which Dr. Shrestha found that McMillian had no synovitis or joint tenderness and laboratory testing was negative for

antinuclear antibodies and rheumatoid arthritis factor (Tr. 22; *see* Tr. 382-83, 405);

(9) an August 11, 2010 consultative examination in which Juan Saitis, M.D. ("Dr. Saitis") noted, *inter alia,* that McMillian: (a) had full range of motion in her upper and lower extremities (with "subjective discomfort"), (b) had normal elevation and rotation of the shoulders, (c) had ankles and feet that were within normal limits, (d) could partially squat, and (e) had a normal neurological exam (Tr. 22-23; *see* 271-76);

(10) a x-ray of the right hand dated August 11, 2010 that showed "no evidence of fracture or dislocation," no erosive changes, and no soft tissue abnormalities (Tr. 276; *see* Tr. 22);

(11) evidence that McMillian had a lumbar laminectomy and fusion on June 3, 2009, and, due to increased pain in her low back and leg that continued to increase as well as degenerative changes, she had a "redo lumbar operation" on December 28, 2010 (Tr. 22; *see* Tr. 251-70, 309-33);

(12) a February 22, 2011 surgery follow-up examination in which Diane Wilson, M.D. ("Dr. Wilson"), a neurosurgeon, reported that, since her surgery, McMillian: (a) was showing improvement of radiculopathy, leg pain, and muscle strength and reporting no problems, (b) was exhibiting only moderate tenderness in the paraspinal muscles and mild tenderness at the sciatic notch, (c) had a negative straight leg raising test, and (d) was to avoid lifting over ten pounds and bending or twisting at the waist and walk as much as tolerated (Tr. 22; *see* Tr. 310-11);

(13) the fact that McMillian claimed in her disability paperwork that gabapentin (Neurontin) was causing her fatigue but that she reported to her treating physician that this medication was not causing any adverse effects (Tr. 23; *see* Tr. 193, 382);

(14) McMillian's testimony that she could go grocery shopping; drive and ride in a car for up to one and half hours without any problems; pull weeds in her yard by sitting on a stool; cook, clean, wash dishes, do laundry, use a computer, and exercise (Tr. 23);

(15) a June 15, 2010 Physical Residual Functional Capacity Assessment ("PRFCA") in which State Agency Medical Consultant ("SAMC") Bob Dodd, M.D. ("SAMC Dodd"), opined that McMillian: (a) could lift and/or carry twenty pounds occasionally and ten pounds frequently; (b) could sit, stand and/or walk about six hours in an eight-hour workday; (c) had the unlimited ability to push and/or pull; (d) could frequently climb ramps and stairs, balance, and crawl; (e) could occasionally climb ladders, ropes, scaffolds, stoop, and crouch, and (f) was

limited in her ability to reach in all directions including overhead (Tr. 23; *see* Tr. 243-50); and

(16) a November 4, 2010 PRFCA in which SAMC Roberta Herman, M.D. ("SAMC Herman"), expressed the same opinions as SAMC Dodd except that she indicated that McMillian could only occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently kneel; and should avoid concentrated exposure to extreme cold, vibration, and hazards. (Tr. 23; *see* Tr. 301-08).

Based on the foregoing, it is clear that the ALJ did consider and analyze McMillian's ability to sit, bend, crouch, reach, handle and finger as well as the severe fatigue from her fibromyalgia and her knee impairments. In fact, many of such limitations are encompassed in the RFC determination limiting McMillian to: (1) sedentary work with the ability to frequently alternate between sitting and standing; (2) frequent but not constant fingering and handling; and (3) detailed but not complex job tasks. The ALJ went through a detailed review of the medical and other evidence in the record in assessing McMillian's RFC. In addition, the ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. Consequently, remand is not required.

The Court next turns to McMillian's argument that the ALJ erred by failing to conduct a function-by function assessment in his RFC determination as required by SSR 96-8p. SSR 96-8p, as relevant here, states:

The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. At step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of "sedentary," "light," "medium," "heavy," and "very heavy" work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it.

RFC may be expressed in terms of an exertional category, such as light, if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in the national economy. However,

17

without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work as it is generally performed in the national economy because particular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level.

. . . .

Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately (*e.g.*, "the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours"), even if the final RFC assessment will combine activities (*e.g.*, "walk/stand, lift/carry, push/pull"). . . .

. . . .

The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). . . .

SSR 96-8p, 1996 WL 374184, at *3, 5, 7 (S.S.A. July 2, 1996)

McMillian is correct that the ALJ did not follow all the requirements of SSR 96-8p. To begin with, the ALJ did not conduct a function-by-function analysis of McMillian's physical capacities. However, case law indicates that this requirement under SSR 96-8p can be satisfied if the ALJ bases his RFC assessment, at least in part, on a SAMC's report containing a function-by-function analysis. *See Beck v. Barnhart*, 205 F. App'x 207, 213-14 (5th Cir. 2006); *Onishea v. Barnhart*, 116 Fed. App'x 1 (5th Cir. 2004). In this case, the ALJ gave "slight" weight to the opinions of two SAMCs that set forth, in PRFCAs, a function-by-function analysis of McMillian's exertional abilities and found, in essence, that McMillian was capable of performing light work. (Tr. 23-24.) The ALJ stated that the SAMCs opinions were rendered before McMillian's second lumbar operation but that "their opinions are supporting of the ultimate finding that the claimant is not disabled." (Tr. 24.) Consequently, the Court finds that such

reports, in conjunction with the other evidence relied on by the ALJ in making the RFC determination, satisfy the function-by-function assessment requirement in SSR 96-8p. Contrary to McMillian's arguments, the fact that the ALJ did not fully adopt the SAMCs' assessments as a whole does not change the Court's finding. *See*, e.g., *Chavira v. Astrue*, No. 11-CV-00262, 2012 WL 948743, at *9, 23  (S.D. Tex. Feb. 29, 2012) (finding that the ALJ, who found that the claimant could perform sedentary work, met the legal standard set forth in SSR 96-8p that required a function-by-function assessment of the seven strength demands when the ALJ, *inter alia*, evaluated the PRFCA of an SAMC who determined that the claimant was able to perform light work).

Furthermore, even assuming the ALJ did not satisfy the function-by function assessment requirement and as to the other requirements in SSR 96-8p that the ALJ failed to comply with, the Fifth Circuit has held that "[p]rocedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party are affected." *Mays v. Brown*, 837 F.2d 1362, 1364 (5th Cir. 1988).  "[R]emand for failure to comply with a ruling is appropriate only when a complainant affirmatively demonstrates ensuant prejudice." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (emphasis omitted).  Errors are considered prejudicial when they "cast doubt onto the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).  Because, as set forth above, substantial evidence supports the ALJ's RFC determination, any error the ALJ committed in failing to follow all the requirements of SSR 96-8p is harmless.[10]  Consequently, remand on this issue is not required.

---

[10] *See*, e.g., *Nash v. Astrue*, No. 3:11-CV-731-CWR-LRA, 2013 WL 4483356, at *4 (S.D. Miss, Aug. 19, 2013) ("While the record in this case reflects the ALJ did not conduct an exhaustive function-by-function analysis of SSR 96-8p, substantial evidence supports his finding that Plaintiff has the residual functional capacity for light

### D. Duty to Develop the Record

McMillian further argues that the ALJ erred in failing to fully develop the facts of the case. (Pl.'s Br. at 16; Pl.'s Reply at 8-10.)  Specifically, McMillian states:

> In this case, assuming that McMillian "knowingly and intelligently"[11] waived her right to counsel, the ALJ failed in his duty to fully develop the facts of the case.  As previously discussed, McMillian made it clear to the ALJ during the hearing that medical records from Dr. Wilson, which were not contained in the record at the time of the hearing, were then available.  At the close of the hearing, the ALJ confirmed that "we'll try and get those additional records."  However, while the transcript contains the updated Dr. Shrestha medical records with the accompanying Administration records request dated June 7, 2011, the record does not contain any updated records from Dr. Wilson's office or an Administration record request, such as the request from April 8, 2011.  Consequently, the unfavorable decision was based on a single four week follow up with Dr. Wilson subsequent to McMillian's extremely complex double level lumbar fusion with rods and screws, which was her second such surgery in an 18 month period.
>
> The importance of Dr. Wilson's medical records after February of 2011 are highlighted by the March 2011 lumbar CT scan, discussed previously, ordered by Dr. Wilson after McMillian's severe radiating low back pain returned subsequent to the single February follow up appointment included in the record. While the significant metal rods made the evaluation limited, the possible fluid collection involving the posterior parapinous soft tissues at the level of the laminectomies, with the obscuration of the spinal canal, were considered "critical results," which were immediately related to Dr. Wilson as soon as the CT was interpreted.  McMillian relied on the ALJ to obtain the critical records relating to the abnormal CT scan, and the failure of the ALJ to obtain these critical post[-] surgery records, especially in this *pro se* case, results in breach of the duty to fully and fairly develop the record, resulting in the decision lacking substance evidence under *Kane*.
>
> Similarly, especially when the claimant is unrepresented, the ALJ has a duty to recontact a treating source where more information is needed to clarify an opinion of that source as to functional capabilities.  In this case, the ALJ cited Dr. Wilson's post[-]surgery orders for McMillian from the single February 2011 follow up obtained, restricting her from lifting over 10 pounds and bending or

---

work."); *Clennon v. Comm'r of Soc. Sec.*, No. 12-1893, 2013 WL 3213072, at *6 (W.D. La. June 24, 2013); *Williams v. Astrue*, No. 3:07-CV-0965-N (BH), 2008 WL 4490792, at *11 (N.D. Tex. Oct. 3, 2008) ("Although SSR 96-8p requires a function-by-function analysis, if the record reflects the ALJ applied the appropriate standard and considered all the evidence in the record, there is no error."); *Conerly v. Barnhart*, No. 1:06-CV-467-LG-JMR, 2008 WL 724030, at *6-7 (S.D. Miss. Mar. 17, 2008).

[11] Because McMillian does not claim that she did not knowingly and intelligently waive her right to counsel, the Court will not analyze this issue. (*See* Pl.'s Br. at 17.)

twisting, giving these orders "significant weight," but then calling the orders temporary by nature. However, under both the Regulation and case law the ALJ was required to recontact Dr. Wilson, because the restrictions did not contain all the necessary information to determine whether McMillian's restrictions would meet the Administration[']s definition of disability or were expected to last for a twelve-month period. Instead the ALJ ignored the severity and significance of the follow on [sic] lumbar CT and failed to order any additional medical records from Dr. Wilson or request she fill out a medical source statement clarifying the opinion of McMillian's physical restrictions, as well as the duration of those restrictions.

(Pl.'s Br. at 17-18 (emphasis in original) (citations omitted) (footnote inserted).)   In addition, McMillian claims that the ALJ erred at the hearing in failing to: (1) explain the purpose of the VE's testimony and that McMillian had the right to cross-examine the VE; (2) suggest that McMillian change her onset date to prior to her 2009 surgery; and (3) cross examine the VE as to the conflicts between the VE's testimony and the DOT. (Pl.'s Br. at 19.)

The ALJ has a duty to develop the facts relative to a claim for benefits fully and fairly. When the ALJ fails in this duty, he does not have before him sufficient facts on which to make an informed decision and his decision is not supported by substantial evidence. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984). It is well established that "[a]n ALJ owes a duty to a *pro se* claimant to help him or her develop the administrative record." *Reefer v. Barnhart*, 326 F.3d 376, 380 (3rd Cir. 2003). When a claimant is not represented by counsel at the hearing before the ALJ, the ALJ "is under a heightened duty to scrupulously and conscientiously explore all relevant facts." *Castillo v. Barnhart*, 325 F.3d 550, 552-53 (5th Cir. 2003); *Brock*, 84 F.3d at 728. Nonetheless, reversal is appropriate only if the claimant shows that he was prejudiced as a result of the insufficient record. *Brock*, 84 F.3d at 728; *Kane*, 731 F.2d at 1220. "To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result." *Brock*, 84 F.3d at 728.

As to McMillian's claim that the ALJ failed to obtain the updated records from Dr. Wilson as he told McMillian he would, the Court notes that the duty to obtain medical records generally belongs to the claimant. *See Gonzalez v. Barnhart*, 51 F. App'x 484, 2002 WL 31319423, at *1 (5th Cir. Oct. 4, 2002). Furthermore, in this case, the evidence shows that the ALJ attempted to help McMillian obtain additional medical records after the hearing and was successful in obtaining such records from Dr. Shrestha. (Tr. 379-409.) In addition, McMillian presents no evidence beyond her own speculative and conclusory opinions[12] that Dr. Wilson's subsequent notes would demonstrate that McMillian could not perform her past relevant work. *See Johnson v. Astrue*, No. 3:10-CV-0246-D, 2010 WL 472275, at *8 (N.D. Tex. Nov. 22, 2010) (failure to obtain pertinent records from treating physician, by itself, is insufficient to demonstrate reversible error); *Hawkins v. Astrue*, No. 3:09-CV-2094-BD, 2011 WL 1107205, at *7 (N.D. Tex. Mar. 25, 2011). Consequently, the Court finds that the ALJ did not err in failing to obtain the updated medical records from Dr. Wilson.

McMillian also claims that the ALJ had a duty to recontact Dr. Wilson, a treating source, to obtain clarifying information so the ALJ could determine whether, based on the limited information in the February 11, 2011 post-surgery examination, "McMillian's restrictions would meet the Administration[']s definition of disability or were expected to last for a twelve-month period." (Pl.'s Br. at 17-18; *see* Pl.'s Reply at 9.) However, "[b]ecause the record contained ample other objective and opinion evidence supporting the ALJ's conclusions" that McMillian

---

[12] McMillian argues that the "importance of Dr. Wilson's medical records after February of 2011 are highlighted by the March 2011 lumbar CT scan." (Pl.'s Br. at 17.) The Court notes that the March 2011 lumbar CT scan is in the record and was considered by the ALJ. (Tr. 375.) McMillian claims that the notations on the CT scan show that these were "critical results," which were immediately relayed to Dr. Wilson as soon as the CT was interpreted. (Pl.'s Br. at 17.) Even assuming the Court agrees with McMillian's interpretation of the notations on the CT scans, there is no evidence of what information was actually in Dr. Wilson's post-February 2011 medical records.

was not disabled, the Court finds that the ALJ was not required to develop the record further by recontacting Wilson. *See Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012).

McMillian also claims that the ALJ erred in failing to provide a "full and fair hearing" because "the ALJ conducted a cursory examination of McMillian['s] impairments, where it was clear she was experiencing difficulty expressing herself and became so overwhelmed that the hearing was postponed for a significant period." (Pl.'s Reply at 9-10.) However, the evidence in this case shows that the hearing before the ALJ lasted approximately thirty-eight minutes (with a short break) and yielded thirty-five pages of testimony. (Tr. 30-67.) At the hearing, the ALJ reminded McMillian that she could be represented by an attorney or a non-attorney representative and even offered to postpone the hearing so McMillian could obtain such a representative if McMillian desired. (Tr. 32-33.) McMillian, however, chose to move ahead with the hearing. (Tr. 33.) In addition, the ALJ questioned McMillian extensively about her impairments, her daily activities, and some of the medical evidence in the record. Furthermore, the ALJ explained to McMillian that a vocational expert was going to review McMillian's work history and give opinions about such work history. (Tr. 33.) At the end of the VE's testimony, the ALJ also asked McMillian if there was anything she would like him to ask the VE and if there was anything he needed to consider in McMillian's case. (Tr. 66.)

Based upon this evidence, the Court concludes that the hearing in this case was sufficient and the ALJ did not err in providing McMillian a full and fair hearing. *See McConnell v. Schweiker*, 655 F.2d 604, 606 (5th Cir. Unit B 1981); *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991) (holding that a hearing that lasted for twenty-six minutes and yielded sixteen pages of testimony in which the ALJ reminded claimant that he could be represented by counsel and questioned claimant about his condition, treatment he had received, his medication, and his daily

routines was sufficient); *James v. Bowen*, 793 F.3d 702 (5th Cir. 1986) (holding that a hearing that lasted ten minutes in which the ALJ questioned the claimant extensively about his condition was sufficient).

Furthermore, even if the ALJ had violated any duty to develop, McMillian has not made a showing that she was prejudiced as a result.  McMillian has not demonstrated, beyond her own unsupported speculation and interpretation, any additional evidence outside the evidence already contained in the record that could and would have caused the ALJ to impose greater functional limitations on McMillian than those originally found by the ALJ.  *See*, e.g., *Jones*, 691 F.3d at 735 ("A mere allegation that additional beneficial evidence might have been gathered had the error not occurred is insufficient to meet this burden.")  The ALJ properly took the evidence into account at each step of the sequential evaluation process.  Because substantial evidence supports the ALJ's decision and McMillian has not shown that she could and would have adduced additional evidence that might change such result, the Court concludes that the ALJ did not violate any duty to more fully develop the record.

### E. Step Two Issues

McMillian also claims that the ALJ erred in not finding that her impairments of depression and chronic pain syndrome were severe at Step Two.  (Pl.'s Br. at 20-23.)  To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at Step Two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); *cf. id.* § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").  The Fifth Circuit, however, has held that a literal application of that

definition is inconsistent with the statutory language and legislative history of the SSA. *See Stone v. Heckler*, 752 F.2d 1099, 1104–05 (5th Cir. 1985). Instead, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe: An impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101.

In this case, as set forth above, the ALJ found at Step Two that McMillian suffered from the severe impairments of post lumbar fusion and fibromyalgia. As to McMillian's claim that the ALJ erred in failing to find her chronic pain syndrome as a severe impairment at Step Two, the Court disagrees as fibromyalgia is a chronic pain syndrome. *See Denton ex rel Denton v. Astrue*, No. 2:04-CV-0331, 2008 WL 763209, at *7 (N.D. Tex. Mar. 21, 2008) (stating that a doctor classified claimant's fibromyalgia as a chronic pain syndrome); *Dowdy v. Hartford Life & Acc. Ins. Co.*, 458 F. Supp. 2d 289, 292 n.5 (S.D. Miss. 2006) (defining fibromyalgia as "a form of chronic pain syndrome or soft-tissue rheumatism"). Thus, the ALJ's finding at Step Two that McMillian suffered from fibromyalgia was, in essence, a finding that McMillian's chronic pain syndrome was a severe impairment.

The next issue is whether the ALJ erred in failing to find McMillian's depression was a severe impairment at Step Two. Even assuming without deciding that the ALJ should have found that McMillian's depression was a severe impairment at Step Two, the ALJ, at Step Four, specifically included a limitation in the RFC determination that McMillian was limited to "detailed, but not complex job tasks" to account for McMillian's mental limitations. (Tr. 20.) Consequently, any error the ALJ committed relating to McMillian's depression at Step Two was harmless. *See Boothe v. Colvin*, No. 3:12-CV-5127-D, 2013 WL 3809689, at *5 (N.D. Tex. July

23, 2013) ("But assuming *arguendo* that the ALJ erred by not finding based on [a doctor's] diagnoses that [the claimant's] impairments are severe, the error is harmless because the ALJ considered these conditions in his RFC analysis."); *Gibbons v. Colvin,* No. 3:12-CV-0427-BH, 2013 WL 1293902, at *16 (N.D. Tex. Mar. 30, 2013) (holding that error under *Stone v. Heckler* potentially causing ALJ not to recognize certain impairments as severe at Step Two was harmless because ALJ considered the impairments in the RFC); *Reliford v. Colvin,* No. H-12-1850, 2013 WL 1787650, at *13 (S.D. Tex. Apr. 25, 2013) ("[E]ven if the ALJ's failure to make a specific severity finding with regard to foot pain was an error, it was harmless because he considered related limitations at subsequent steps of the disability analysis.").

### F. Credibility Assessment

Finally, McMillian argues that the ALJ erred in making his credibility determination because such determination was based on a deficient RFC assessment and did not take into consideration any of the seven factors set forth in SSR 96-7p. (Pl.'s Br. at 23-25.) In evaluating a claimant's subjective complaints, the ALJ first considers whether there is a medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996). Once the impairment is found, the ALJ evaluates the intensity, persistence and limiting effects of the symptoms on the claimant's ability to do basic work activities. 20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 374186, at *1.

A claimant's statements about pain and other symptoms are not conclusive evidence of disability, but must be accompanied by medical signs and findings of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged and that would lead to the conclusion that an individual is disabled. 42 U.S.C. § 423(d)(5)(A). A claimant's

testimony must be consistent with the objective medical evidence and other available evidence. 20 C.F.R. § 404.1529. When assessing the credibility of an individual's statements, the ALJ considers, in addition to the objective medical evidence, the following: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, which the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 CFR § 404.1529(c); SSR 96-7p, 1996 WL 374186, at *3.

In this case, the ALJ first set forth the two-step process that he must follow to make the credibility determination. (Tr. 21.) Then, the ALJ stated:

> The claimant alleges that she suffers from fibromyalgia, back pain, knee pain, shoulder pain, and feet pain. She notes hand problems for the last year and a half. She reports that she lies down everyday for 30 minutes to an hour and sometimes sleeps for half the day. She can be on her feet for maybe an hour or longer. She notes difficulty reaching things and that it hurts her shoulders to hold her arms up. She reports difficulty using the computer mouse and notes that her housework and yardwork take longer to perform. The claimant alleges that she forgets things and that her pain medications make her tired. Physically, the claimant reported difficulty lifting, walking, standing, sitting, climbing stairs, bending, and using her hands. Mentally, she alleges difficulty with memory and concentration.

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment.

(Tr. 21 (internal citations omitted).)

27

As to McMillian's argument that the ALJ erred in relying, in essence, on a faulty RFC assessment to reject McMillian's credibility, the Court notes that, as set forth above, it has already determined that the ALJ's RFC determination was supported by substantial evidence. Thus, McMillian's arguments to the contrary are rejected.

As to McMillian's argument that the ALJ failed to consider the seven factors in making his credibility decision, the Court disagrees. As to factor one, the ALJ specifically reviewed McMillian's daily activities several times during his analysis. (*See*, e.g., Tr. 21, 23.) As to factors two, three and seven, the ALJ set forth all the alleged impairments that McMillian claims she suffers from, including fibromyalgia, pain in her back, knee, shoulder, and feet, and problems with her hand. (Tr. 21.) In addition, the ALJ, in later parts of the analysis, set forth the complaints of pain and other impairments that McMillian made to various physicians and the physicians' various recommendations. (Tr. 21-24.) Furthermore, the ALJ noted that McMillian claimed that "non-specific arthralgias and myalgies" were "present all day long." (Tr. 21.) Based on the treatment records, it appears that McMillian's pain was worse on some occasions than on others. (Tr. 21-23.) As to factor four, the ALJ stated:

> The claimant reports side effects to her medication, but there is no evidence that the claimant reports this to her treating physicians. In fact, while the claimant states in disability paperwork that gabapentin causes tiredness, the claimant reported to her treating physician that this medicine was causing no adverse effects. Moreover, the claimant does report that her medications help with her pain symptoms.

(Tr. 23; *see also* Tr. 21 ("claimant reported that she was currently doing 'ok' on her current medications") ("Neurontin medication was increased at that time, but her fibromyalgia was reportedly stable on the same dosage of Ultram".) As to factor five, the ALJ reviewed the various injections and surgeries that McMillian had undergone in an attempt to improve her condition. (Tr. 22-23.) Based on the foregoing, it is clear that the ALJ did properly consider the

seven factors in making his credibility determination. Thus, the ALJ did not err and remand is not required as to this issue.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **November 6, 2013**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED October 24, 2013.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv